# DS102076

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2017 AUG 11  PM 4:49

DEPUTY CLERK

WWLC Investment, L.P.
Plaintiff

v.

Sorab Miraki
Defendant

**817 - CV 2127 - M**

Civil Action No.

## **COMPLAINT**

WWLC Investment, L.P would like to reopen Case# 416.02539.2017 as this case was trialed without adequet clarification by plantiff's attorney and judge did not fairly assess situation.

\* Attach additional pages as needed.

Date: Aug 11, 17

Signature: Chen

Print Name: Wendy Chen, WWLC Investment, L.P.

Address: 8356 Sunrise Drive

City, State, Zip: Wylie, Tx 75098

Telephone: 626 - 258 - 9608

**United States Department of Justice and Fraud**

**1100 Commerce St. #300, Dallas, TX 75242**

**OBJECTIVE:** Humble request to review the case between Sorab Miraki (Plaintiff) & WLC INVESTMENT, LP (Defendant) to file a motion and stop auction scheduled to take place on August, 2017 at 2901 W. 15th St, Plano TX 75075 (Subject Property).

Defendant wants the court to review the **case # 416-04856-2015** as these are the facts with timeline as follows:

1. Sohrab Miraki (Plaintiff) signed 1st Lease Agreement with WLC Investment LP (Defendant) on April 15, 2013 (Commencement Period).

2. Sohrab Miraki (Plaintiff) moved several large used kitchen equipment(s) and packaged food(s) into 20,000 sqft of the property, although leased space was only 5,000 sqft on April 17, 2013.

3. Sohrab Miraki (Plaintiff) signed 2nd Lease Agreement with WLC Investment LP (Defendant) to replace the first contract because engineers corrected the sqft as needed by the city to approve approximately **6,546 sqft.** These revisions had to be made to accommodate more leasable space needed by tenant. The date of the 2nd Lease Agreement was September 30, 2018 (Commencement Period).

4. First month rent was due after 3 months of Landlord (Defendant) obtaining permit, finish wall and bathroom. The date Landlord

1

(Defendant) completed and obtained the permit is January 30, 2015.

5.  The permitting and construction project that started in August 1, 2013 lasted 18 Months to complete because Plaintiff failed to move his storage items (large used kitchen equip) around for the contractors to complete work. **Plaintiff intentionally postponed the completion of repairs as it allowed for Plaintiff to use the subject property as a STORAGE facility free of charge.** After City of Plano approved the construction, Plaintiff would remove electric wires and other items to attempt to fail the inspections. This resulted in the city inspectors who were upset at Plaintiff for making fraudulent claims and delaying the Finalizing of work on Nov 25, 2015.

6. After several attempts to collect rents from May 01, 2015 to November 30, 2015, Landlord Posted "Notice to Vacate" inside the two front doors of the leased space (visible from outside) on December 01, 2015 for non-payment of rent from 3 months after Permit Approval.

7. Eviction Court at the City of Plano court was in favor of WLC Investment LP (Defendant/Landlord) and ordered Plaintiff to vacate the leased premises for non-payment of rent.

8. Plaintiff and Defendant were both in agreement for Plaintiff to

remove all equipment from property within 2-3 weeks. These items were sold by the Plaintiff, removed or left behind at the property.

9. Defendant, owner of WLC Investment LP, Wendy Chen did not receive notice to appear to court (April 6,2016) nor did she received the judgement. She was in surprise on May 31, 2017 when she realized that the Subject Property was scheduled for auction on June 06, 2017.

10.     Defendant, filed for motion on June 02, 2017 and successfully delayed the auction.

11.     On August 02, 2017, the motion of appeal was rejected by the court because defendants Certified Public Accountant (CPA) forgot to file the reinstatement of corporation documents and company was deemed as "Expired" status.

12.     The Objective of this letter is to humbly request to stop the auction scheduled to take place on September 5, 2017 at 2901 W. 15th St, Plano TX 75075 (Subject Property) and moreover, reopen this case and allow Defendant to speak against this injustice. Defendant, has been paying all her bills (taxes, insurance, utility bills) for the property. It is not fair that aside from security deposit of $3,300, Plaintiff has not paid Landlord any additional funds for using the leased spaced since **April 2013 – May 2017 as a Storage Facility.**

The following are the words of the defendant, a law-abiding citizen of the United States of America:


"Because last year I lived LA California. And Sorab Miraki is a liar. When he asked us to lease the space for 5000 sqft. We didn't had that size. We only has over 20000 sqft. He said he could waiting we divided and he said he can help us to do it. I said we do know take how long. We need to go to City apply the permit and asked the engineer to make plan and map. He said: I know a engineer he charge very cheap, and asked our manager gave him $5000. We gave him. After 5 months we didn't get anything and my manager asked what happen? He gave us a old copy map. We got very angry. Because the Sorab need to start the contract and pay the rent. He return the money to us and asked us sign the contract again. Because when we sign the first contract. We agree him start remodel his place to open business and gave him the key for the over 20000 sqft. The next day he put all garbage to our shopping center and didn't pay one cent, and his big ice making house very big, When he move in broken our front door. He said we already sign contract I need your space put my store. I said that's you had no right to used our over 20000sqft. He said : Oh ,When you need right side, I'll send some one move to left side. When you need left side I'll send someone to right side. And used my electric utilities to open his ice house keep his junk food. He didn't pay rent. didn't pay utilities, and keep all the food already expire day. He sue me he lost profit. Is there any yap (varlet) in the world? We need to pay

4

taxes, insurance, and all utilities. He used our over 20000 sqft shopping for free for 4 years. He didn't lose anything.

He said WLC Investments LP is a foreign partnership. I am a U.S. citizen, and the manager is a US citizen our company is a U.S. company with no foreign people.

Page 2 No #6

"Plaintiff is an entrepreneur who owns and operated a specialty grocery business and restaurant that offered a wide variety of Brazilian, Mediterranean, and other international foods at 2901 W. 15th Street in Plano, Texas from 2012 through February 2013, in a commercial space owned and operated by Defendant". The fact was at that time, 2901 W 15th St in plano lease for Big Lot do business not for him, He is a big liar

Page 3 No #7 "In February 2013, Plaintiff and Defendant entered into a new lease agreement that would re- locate Plaintiff's business to a different commercial space within the same shopping center owned and operated by Defendant (the "2013 Lease Agreement"). The physical address of the new space is 2901 W. 15th Street, Unit B, Plano, Texas 75075". In Feb. 2013 Big Lots just moved out I didn't know the Sorab. In April 2013, that was the first time he came to my space and asked the space is for rent? I GAVE HIM THE APLICATION FORM. Defendant disagrees with this claim. Defendant states her first time interacting with the Plaintiff was in April 2013. Defendant has on record of the "Commercial Lease Application" which was filled out by Plaintiff on April 15, 2013.

He is suing me, the two years he used our shopping center as used equipment storage and did not pay even one cent in rent. He said that two year if he did business he would bring $8,400 in profit every month.

5

How come he had no license and didn't do any remodeling and the profit automatically coming every month and ask us to give him over $300,000.00 and $700,000.00 in punishment.

Page 2 No #9 "During negotiations for the 2013 Lease Agreement, Plaintiff advised Defendant that significant remedial and repair work needed to be performed to Unit B before it would be suitable for his business, including, but not limited to:

a.    Installation of rear door along South wall;

b.    Installation of door along East wall;

c. Installation of ceiling insulation comparable to the other commercial space in the same development;

d.    Installation of proper drainage that meets all City and County inspection requirements;

e.    Confirmation that all electrical wiring and equipment is in good working order, and meets all City and County inspection requirements;

f. Restoration and/or replacement of missing ceiling tiles in both bathrooms; and

g.    Installation of partitions between toilets in bathroom, and seat on both toilets."

The contract didn't had the above items at all. He was lie too. After one and half years, we pass the city final inspection. And I gave the sorab

6

notice he should to apply his liscen and start remoldle his business need. He didn't do anything. And went to city said the electric no good why you pass their liscen and asked city check again and again. And final gave me a amenment Do more three things. He lie me when you sign I'll paid the rent. And I didn't know he just lie me and want extend more time to stay. We had no above items agreement. Please see the attach. Defendant states during the negotiation for the 2013 Commercial Lease contract, none of these points were agreed upon. Defendant states that no such agreement was made for the renovation of 2901 W. 15th Street, Unit B, Plano, Texas 75075.

Page 3 No #10   He is lying here as well. I did not agree to the claims made here. I had to go to court to file for eviction .And we win the case. We notice him he must moved

Page 5 No#20   He has no evidence of opening his business to claim he would have made $245,000.00 profit. He didn't apply permit and didn't do anything to open business.How he get profit?

Page 5 No#21   When he moved in the food was past the expiration date. Please see the picture. He is lying about his inventory being worth $120,000.00.

Page 5 No#25   Plaintiff did not pay even one cent toward the rent which he claims to have done.

**Testimonies:**

_____

"Mr. Sorab took the WLC Investments, LP shopping center. We never seen somebody in USA illegal took the owner space to put his garbage and things and can sue for more than One Million Dollars" – Neighboring store owner of Top Copy

7

"We lease the owner space. We need to spend too much money to remodel to open a business. When we took back the property, we saw that Sorah didn't do anything for business. Mr. Sorah asked us in May 2013 to divide 5000 Square feet for him to lease. He said he has engineer can divide for us and for very cheap. He asked us to pay him $5000. We paid the $5000 to divide the space but the work was not done. We gave him the keys to the space so he could remodel the space, but he did not do anything. All he did was move his garbage into the space equally more than 20,000 square foot." - Peter Tsai

The Sorab is a big liar. He owes us 4 years rents and we damage more $20, 000 to divide small space for him. He should pay us more $300000. And quite apart from his junk food that's all expire day when he moved in. these made the shopping center all around mouses. We need to pay him monney? This is gangster logic.

"My family and I spend 28 years of hard work to buy and care of our business since 1989. I worked as a babysitter, in restaurants, hand painted, and even sewing. When I saved thirty thousand dollars ($30,000.00) I bought a small apartment in Long Beach, LA. Im working hard for 8 years. I sold it and did 1031 exchange to buy Plano trip center in 2003. In January 2013, Big Lots moved out to another big place and I had more than 20,000 square foot of vacancy. I did not know the Iraqi man, Sorab, was currently under eviction when he came and asked me to divide and lease out 5,000 square feet for him to open a restaurant and market. From beginning he deliberately wanted to cheat me. He had an engineer (who had no permit) design a plan to divide the 5000 square feet for him. He asked $5,000.00 for the remodel, but it was never done. We've asked many times for our money back, but it was never returned.

He asked to sign the contract for the lease. I told him we can sign the lease after we divide the space. He insisted he wanted to sign the contract before the remodel, so he could ensure the space was his. He paid $3,300.00 for the deposit and the next day he moved everything in

and broke the door. He used more than 10,000 square feet of space.

I got agree with the status. He did not have the right to use the space he did not pay rent for. He has no right to move his junk into the space. With his junk everywhere, the workers could not do any remodeling. We could not update the electric and insulation because his things were there. There was on space for the workers to work. It took me a year and half to finish work that could've been done in half a year.  I trusted a lawyer to evict him. After winning the case, he threatened me and said," Dare your harm a hair of mine. I won't let you go". He asked his son in law to sue me for

$500,000.00 – $1,000,000.00. At that time, I thought he was joking. He owed me too much. Why would be sue me? My lawyer told me and I didn't believe it. After all I never got the summons and didn't know about the judgement until action notice was put in on the wall on May 29, 2017. The new tenant told me. He went there and asked the tenant this paper.

I am almost 70 years old. I hope a righteous judgement. I had only this trip center of my 28 years of meticulous care to my retirement. If is rap by him, I will be sad. All my neighbors, new tenants, and workers can be my witness to this case. I believe America is a justice country. I am a US Citizen. I love my country and the justice must win".


Sincerely,

 **Wendy Chen**

WLC INVESTMENT, LP

Wendy16208@yahoo.com

9

Cause No.: 416-02539-2017

| | | |
|---|---|---|
| WWLC Investment, L.P. | § | In the District Court |
| -Plaintiff | § | |
| | § | |
| vs. | § | 416th Judicial District |
| | § | |
| Sorab Miraki & Tom Wylie | § | |
| -Defendants | § | Collin County, Texas |

### First Amended Motion for New Trial / Motion for Rehearing

Plaintiff, WWLC Investment, L.P. ("Plaintiff" or "Landlord"), whose assumed name is WLC Investment, L.P., respectfully files this First Amended Motion for New Trial / Motion for Rehearing, in connection with Plaintiff's Bill of Review to challenge the Default Judgment secured by Defendant, Sorab Miraki ("Defendant" or "Tenant"), on the grounds that the entry of a Default Judgment was improper and would be reversed on appeal, and that it was an abuse of discretion not to vacate the Default Judgment grant Plaintiff a new trial. In support, Plaintiff states the following.

The Court entered a Default Judgment against WLC Investment, L.P., on November 28, 2016. A true copy of such Default Judgment is attached as Exhibit 1.

Plaintiff had not been personally served any human being with citation or petition for the underlying suit, captioned and numbered: "Sorab Miraki v. WLC Investment, L.P., Cause No. 416-04856-2015, in the 416th Judicial District Court for Collin County, Texas" ("Underlying Suit"). Plaintiff did not have notice of the Default Judgment, as no notice was provided by the Clerk.

The dispute in the Underlying Suit arose from a commercial lease ("Lease") entered into between Plaintiff, as Landlord, and Defendant, Sorab Miraki, as Tenant, for the premises located

**First Amended Motion for New Trial / Motion for Rehearing - Page 1**

at 2901 W. 15th Street, Plano, Texas 75075 ("2901 Premises"). A true copy of the Lease is attached as Exhibit 2.

As stated in the Lease, all notices to the Landlord were to be issued to the Landlord's address: "WLC Investment, L.P., 9917 Rose Avenue, El Monte, CA 91731." See page 13 of the Lease.

## A. Lack of Proper Service / Lack of Receipt of Citation and Petition

Defendant's Original Petition, and his First Amended Petition both indicate that Plaintiff "is a foreign partnership with a principal place of business at 9917 Rose Avenue, El Monte, California 91731." A true copy of Defendant's Original Petition and his First Amended Petition are attached as Exhibits 3 and 4, respectively. That address comports with the mailing address listed in the Collin Central Appraisal District information for the Premises. A true copy of such information is attached as Exhibit 5.

However, Defendant apparently did not attempt to serve Plaintiff or Wendy Chen ("Ms. Chen"), Plaintiff's principal, at the California address. Instead, Defendant filed a motion for Substitute Service, and secured an Order on Plaintiff's Motion for Substitute Service. A true copy of such Order is attached as Exhibit 6. Such Order permitted Defendant to effectuate service by leaving citation and petition with anyone over the age of sixteen years at 5610 East Side Avenue, Dallas, Texas 75214 ("5610 East Side"), or by attaching a true copy of the citation and petition to the front door of 5610 East Side.

According to the Return of Service, on April 6, 2016, the process server did not serve anyone personally, and simply attached a true copy of the citation and petition to the front door of 5610 East Side. A true copy of such Return of Service is attached as Exhibit 7.

**First Amended Motion for New Trial / Motion for Rehearing - Page 2**

As per the Affidavit of Wendy Chen, Ms. Chen was not living at 5610 East Side on April 6, 2016. In fact, there are two dwelling units at 5610 East Side – one in the front and one in the rear. On April 6 ,2016, no one was living in the front unit of 5610 East Side.  See the Affidavit of Ms. Chen, and the Affidavit of Peter Tsai.  That would explain why the process server could find no one with whom to leave the citation and petition on April 6, 2016.

Plaintiff did not consciously ignore the citation and petition.  Plaintiff never received it. Even assuming that Defendant's process server affixed citation and petition to the door of the front unit at 5610 East Side, there is no evidence as to how firmly it was affixed, or how hard the wind blew, or whether some third party removed the documents.

As shown below, even if WLC or Ms. Chen had received the citation and petition, a flimsy reason for not responding to the suit would suffice to permit the Court to set aside the Default Judgment. As the Texas Supreme Court stated in *Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (Tex. 1939):

> Some excuse, but not necessarily a good excuse, was the test there prescribed. When
> the opinion in that case is analyzed, it seems clear that the absence of an intentional
> failure to answer rather than a real excuse for not answering was the controlling fact.

133 S.W. 2d at 125.

Defendant has no evidence of any intentional failure to answer the Underlying Suit.  In fact, Plaintiff took quick action when Ms. Chen found out about the Default Judgment. Ms. Chen learned about the Default Judgment when Tom Wylie, Deputy Constable for Collin County, wrote a letter dated May 25, 2017, to WLC Investment, LP, to advise that he was in the process of executing on the Judgment. A true copy of Constable Wylie's letter is attached as Exhibit 8. May 26, 2017, was

**First Amended Motion for New Trial / Motion for Rehearing - Page 3**

a Friday. Constable Wylie's letter has no indication that it was couriered or otherwise delivered on May 26, 2017. So, presumably, Constable Wylie mailed the letter, and it was delivered to the 2901 Premises either on Saturday, May 27, 2017, or on the following Tuesday, May 30, 2017, after Memorial Day. On June 1, 2017, Plaintiff filed its Original Petition for Bill of Review. Plaintiff requests that the Court take judicial notice of the date of such filing, and how quickly it followed the date of Constable Wylie's letter (Exhibit 8). Such quick action negates any conscious disregard of the Underlying Suit.

As the court stated in Ratcliff v. Ratcliff, 2010 Tex. App. LEXIS 2133, 2010 WL 1087517 (Tex. App. – Beaumont 2010):

> If the defendant was not served with process, the defendant is "generally entitled to a new trial without any further showing." *MobileVision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P.*, 260 S.W.3d 561, 564 (Tex. App.--Dallas 2008, no pet.) (citing *Fid. & Guar. Ins. Co. v. Drewery Constr. Co., Inc.*, 186 S.W.3d 571, 574 (Tex. 2006)).

While the Court granted substitute service to permit "attaching a true copy of the citations" ... "to the front door of 5610 East Side Avenue, Dallas, Texas 75214," the Court probably presumed that someone was living there. As attested in the Affidavit of Ms. Chen and the Affidavit of Mr. Tsai, no one was living behind the "front door of 5610 East Side Avenue," so, it was not reasonably calculated that Plaintiff or Ms. Chen would be on notice of the Underlying Suit.

Defendant could have avoided service of process issues by simply serving WLC through its registered agent for service of process. In April 2016, WLC's registered agent was HPZ International, Inc., whose address was: 3100 S. Lamar, Suite 103, Dallas, Texas 75215. If Defendant

**First Amended Motion for New Trial / Motion for Rehearing - Page 4**

had tried to serve WLC's registered agent, Defendant likely could have perfected service in one trip.

**B. Meritorious Defense**

Plaintiff has a meritorious defense, as set out in the following facts.

1. Defendant failed to pay rent for the Premises.

2. Defendant breached the Lease (Exhibit 2) in a number of ways. Defendant had leased about 5,000 square feet at the Premises. See page 2 of the Lease. However, Defendant moved several large used pieces of kitchen equipment into the Premises, along with packaged food items, and occupied about 20,000 square feet at the property.

3. The first month's rent under the Lease was due three months after the Landlord had completed certain improvements, and secured an approval by the City of Plano. The date that the Landlord completed the work and secured an approval by the City of Plano was January 30, 2015. See Exhibit 9 which is a true copy of on line permit No.BLD13-10186, which signifies the approved date of January 30, 2015. The remodeling project took longer than expected because the Tenant failed and refused to move the items he had stored in the Premises. Tenant appeared to be uncooperative and appeared unmotivated to cooperate as he would enjoy free rent while the construction was ongoing. As long as the construction was ongoing, Tenant did not owe rent under the Lease.

4. After Landlord completed the improvements for the Premises, Tenant removed electrical wires and undertook other steps to sabotage the completion of the remodeling project. As a result, the completion was delayed, and more time went by without Tenant owing rent under the Lease. See the Affidavit of Ms. Chen.

5. Landlord made several attempts to collect rent from Tenant from May 1, 2015, to November

**First Amended Motion for New Trial / Motion for Rehearing - Page 5**

30, 2015, but without success.

6.   Since Tenant was in default of his rent obligations, on about December 1, 2015, Landlord posted a "Notice to Vacate" inside the two front doors of the Premises.  The Notice to Vacate was visible from the outside.  A true copy of the Notice of Vacate is attached as Exhibit 10.

7.   On about December 4, 2015, Landlord filed a Petition in Justice Court to evict Tenant from the Premises ("Petition to Evict Case").  The style and caption of the Petition to Evict Case is: "WLC Investments, L.P. v. Sohrab Miraki, Cause No. 31-EV-15-01861."  A true copy of such Petition is attached as Exhibit 11.

8.   The Justice Court held a hearing on Petition to Evict Case on December 17, 2015, and entered Judgment in favor of Landlord.  Tenant did not appeal the Justice Court Judgment.

9.   On January 6, 2016, Landlord applied for a Writ of Possession.  A true copy of such application for Writ of Possession is attached as Exhibit 12.

10.  On January 6, 2016, Landlord secured a Writ of Possession signed by the Justice of the Peace for the Petition to Evict Case.  A true copy of such Writ of Possession is attached as Exhibit 13.

11.  Thereafter, Landlord and Tenant discussed and agreed on a plan for Tenant to remove his property within two to three weeks.  Tenant sold some of the property, removed other pieces of the property and abandoned the remainder at the Premises.

12.  At no time during such discussions did Tenant advise Landlord that Tenant had filed the Underlying Suit.

13.  Aside from the initial security deposit of $3,300.00, Tenant did not pay rent to Landlord.

**First Amended Motion for New Trial / Motion for Rehearing - Page 6**

14.    Tenant had been evicted from a previous shopping center location located at 2977 W. 15th Street, Plano, Texas 75075 ("2977 W. 15th Street Premises"), owned by Plano Prairie Partners, Ltd. ("Plano Prairie Partners").  A true copy of the Forcible Detainer Action ("Forcible Detainer Action") to evict Tenant from the 2977 W. 15th Street Premises is attached as Exhibit 14.

15.    According to the Forcible Detainer Action (Exhibit 14), Tenant occupied the 2977 W. 15th Street Premises from about September 1, 2011, through May 2013, but failed to pay rent due in August 2012, and from October 1, 2012, through April 2013.  According to the Forcible Detainer Action (Exhibit 14), Tenant owed Plano Prairie Partners rent of $20,269.00, and accrued late charges of $29,956.65.

16.    Plano Prairie Partners secured an Eviction Judgment on about May 21, 2013, against Tenant. A true copy of such Eviction Judgment is attached as Exhibit 15.

17.    To secure the Default Judgment, Tenant attested in paragraph 27 of Tenant's Affidavit in support of his Motion for Default Judgment that his business "generated at least $8,400.00 per month in net profits" between January 2012 and March 1, 2013.  The fact that Tenant was not paying rent for the 2977 W. 15th Street Premises, and had to be evicted for non-payment of rent, undercuts Tenant's contention that he was making significant money during that time period.

## C. Applicable Law

A Court should set aside a default judgment if the defendant satisfies the requirements set out in *Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (Tex. 1939).

In *In re: Britt*, 2016 Tex. App. LEXIS 12581, 2016 WL 9175819 (Tex. App - Texarkana

**First Amended Motion for New Trial / Motion for Rehearing - Page 7**

2016), the court stated:

> A default judgment should be set aside and a new trial ordered where (1) the failure leading to default was not intentional or the result of conscious indifference, but was due to mistake or accident; (2) the defendant has set up a meritorious defense to the plaintiff's claim; and (3) granting a new trial will not cause delay or otherwise work injury to the plaintiff. *Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (Tex. 1939). If any element of the three elements is not met, the trial court abuses its discretion by granting a new trial. See *Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994).

*Id.* at *4.

In *Craddock*, the Texas Supreme Court discussed the quality of excuse for not answering the suit:

> Some excuse, but not necessarily a good excuse, was the test there prescribed. When the opinion in that case is analyzed, it seems clear that the absence of an intentional failure to answer rather than a real excuse for not answering was the controlling fact.

133 S.W. 2d at 125.

With the entry of a default judgment, there necessarily will be delay particularly where the defendant was not properly service with citation and petition.

In *$9,000.00 U.S. Currency v. The State of Texas*, 2014 Tex. App. LEXIS 11943, 2014 WL 5490946 (Tex. App. - Texarkana 2014), the court made observations concerning how a court should address service problems that lead to a default judgment:

**First Amended Motion for New Trial / Motion for Rehearing - Page 8**

Finally, we observe that, even though the default judgment recites that West was duly served with citation, that statement is contradicted by the record. "When a defendant contests a default judgment on the grounds that he was not properly served, recitations in the judgment will not prove service when the record contains no independent evidence of service, such as a return." State v. Bristol Hotel Asset Co., 65 S.W.3d 638, 642-43 (Tex. 2001) (citation omitted). A default judgment is improper against a defendant who has not been served in strict compliance with the law, accepted or waived service, or entered an appearance. SeeTex. R. Civ. P. 124; Wilson v. Dunn, 800 S.W.2d 833, 836 (Tex. 1990).

Id. at *7.

"A bill of review is an equitable proceeding to set aside a judgment that is no longer appealable or subject to challenge by a motion for new trial." Caldwell v. Barnes, 154 S.W.3d 93, 96 (Tex. 2004) (per curiam) (citation omitted) (Caldwell II); see alsoTex. R. Civ. P. 329b(f) (on expiration of time within which trial court has plenary power, "a judgment cannot be set aside by the trial court except by bill of review for sufficient cause"). A bill-of-review plaintiff must ordinarily prove "(1) a meritorious defense to the underlying cause of action, (2) which the plaintiffs were prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on [its] own part." Caldwell II, 154 S.W.3d at 96. "[W]hen a bill-of-review plaintiff claims a due process violation for no service or notice, it is relieved of proving the first two elements set out above." Mabon Ltd. v. Afri-Carib Enters., Inc., 369 S.W.3d 809, 812

**First Amended Motion for New Trial / Motion for Rehearing - Page 9**

(Tex. 2012). As for the third element, "[a]n individual who is not served with process cannot be at fault or negligent in allowing a default judgment to be rendered." Caldwell II, 154 S.W.3d at 97. "[T]hose not properly served have no duty to act, diligently or otherwise." Ross v. Nat'l Ctr. for the Emp't of the Disabled, 197 S.W.3d 795, 798 (Tex. 2006).

*Id.* at *7-8.

"We review a trial court's ruling on a bill of review for an abuse of discretion, indulging every presumption in favor of the court's ruling." Davis v. Smith, 227 S.W.3d 299, 302 (Tex. App.-Houston [1st Dist.] 2007, no pet.) (citing Interaction, Inc./State v. State/Interaction, Inc., 17 S.W.3d 775, 778 (Tex. App.-Austin 2000, pet. denied)). The order, quoted above, contains a disconnect between the recited rule that an unserved defendant by definition cannot be negligent in not responding, and the finding that West was negligent in that way. The record does not demonstrate proper service of citation on West. Not having been served with process, West could not have been at fault or negligent in allowing the default judgment to be taken against him. The determination that West's negligence was at least in part the cause of his lack of notice of the lawsuit is not supported by the record. The suit was filed and mailed to West on or about August 5, 2010, his brother signed for the mail on or about August 7, and the default judgment was entered August 30. We can find nothing in the record pointing to negligence on the part of West in the twenty-three days between the delivery of the suit to his brother and the date of judgment. Strict compliance with the rules relating to proper service is required, lest the service be

**First Amended Motion for New Trial / Motion for Rehearing - Page 10**

rendered invalid. See Primate Constr. v. Silver, 884 S.W.2d 151, 152 (Tex. 1994) ("The return of service is not a trivial, formulaic document. It has long been considered prima facie evidence of the facts recited therein."). As noted above, there is no return in the record. Lack of fault or negligence "is conclusively established if the plaintiff can prove that he or she was never served with process." Caldwell II, 154 S.W.3d at 97.

*Id.* at *8-9.

**First Amended Motion for New Trial / Motion for Rehearing - Page 11**